UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

GHAZANFAR HUSSAIN QURESHI, ET                CIVIL ACTION
AL.

VERSUS                                        NO: 10-1861

ERIC HOLDER, U.S. ATTORNEY                   SECTION: R(2)
GENERAL, ET AL.

### ORDER AND REASONS

In this asylum case, Eric Holder, Attorney General of the
United States, Janet Napolitano, Secretary of the U.S. Department
of Homeland Security, Alejandro Mayorkas, Director of U.S.
Citizenship and Immigration Services ("USCIS"), and Marie
Hummert, Director of the USCIS Houston Asylum Center
(collectively, the "Federal Defendants") move to dismiss on the
grounds that the Court lacks subject matter jurisdiction and that
plaintiffs have failed to state a due process claim. Because the
termination of plaintiffs' asylum status is not a final agency
action, the Court lacks jurisdiction over plaintiffs' complaint.

Defendants' motion is therefore GRANTED, and plaintiffs' complaint is DISMISSED.

**I.   Background**

A.   *Factual Background*

Plaintiff Ghanzafar Hussain Qureshi is a citizen of Pakistan who entered the United States and applied for asylum in 1999. Qureshi asserted in his asylum application that he suffered persecution on account of his membership in the Jammu Kashmir Liberation Front ("JKLF").  Qureshi's application for asylum was granted in 2000, and derivative asylum status was granted to his wife and six children.

On January 27, 2009, Qureshi received a Notice of Intent to Terminate Asylum Status from the USCIS.[1]  The notice states that Qureshi may not have been eligible for asylum because his contributions to the JKLF and participation in JKLF activities "potentially" constituted persecution of others on account of a protected characteristic under 8 U.S.C. 1158(b)(2)(A)(I).  The notice also informed Qureshi that he would have the opportunity to respond to this adverse information in a termination interview that was set for February 27, 2009.  At that interview, Qureshi

───────────────

[1]   R. Doc. 1, Ex. 4.

stated that he became the Secretary General of the JKLF for the
Mirpur District in 1991 and that he donated money to the group
and arranged public protests.[2]  Qureshi asserted that he was not
aware of any violent activities of the JKLF and that he did not
communicate with JKLF members outside of his district.

On March 20, 2009, the USCIS issued a Notice of Termination
of Asylum Status to Qureshi.[3]  This notice informed Qureshi that
his asylum status had been terminated because a preponderance of
the evidence indicated that he had "participated in the
persecution of another person on account of that person's
nationality and political opinion" as an "active and prominent
member" of the JKLF.  The notice also informed Qureshi that he
and his wife and children had been placed in removal proceedings
and that his employment authorization was terminated under 8
C.F.R. § 208.24(c).  On March 23, 2009, the USCIS issued to
plaintiffs a Revised Notice of Termination of Asylum Status, with
only minor revisions.[4]

---

[2]   R. Doc. 1, Ex. 5.

[3]   R. Doc. 1, Ex. 6.

[4]   R. Doc. 1, Ex. 8.

On June 29, 2010, Mr. Qureshi, along with his wife and children, filed this action against the Federal Defendants.[5] Plaintiffs claim that the termination of their asylum status without a showing by specific evidence that Mr. Qureshi was a persecutor violated the Immigration and Nationality Act, federal regulations, the internal guidance of the USCIS, the Administrative Procedures Act, and plaintiffs' due process rights.  The Federal Defendants move to dismiss on the grounds that the Court lacks jurisdiction over plaintiffs' complaint and that plaintiffs have failed to state a due process claim.

B.   *Asylum and Removal Proceedings*

A grant of asylum does not convey a right to remain permanently in the United States.  8 U.S.C. § 1158(c)(2).  An asylum officer may terminate a grant of asylum if the alien was not eligible for asylum at the time it was granted, among other reasons.  *Id.; see also* 8 C.F.R. § 208.24(a)(1) & (2).  Under the "persecutor bar," an alien who "ordered, incited, assisted, or otherwise participated in the persecution of any person on account of race, religion, nationality, membership in a

_____

[5]    R. Doc. 1.

4

particular social group, or political opinion" is not eligible for asylum.  8 U.S.C. § 1158(b)(2)(A)(I).

Before terminating a grant of asylum, the asylum office must give the alien notice of intent to terminate, "with reasons therefor," at least 30 days prior to a scheduled termination interview.  8 C.F.R. § 208.24(c).  At that interview, "[t]he alien shall be provided the opportunity to present evidence showing that he or she is still eligible for asylum."  *Id.*  If the officer determines that the alien is no longer eligible for asylum, the officer must give the alien notice that his or her asylum status, and "any employment authorization issued pursuant thereto," are terminated.  *Id.*  When an alien's asylum status is terminated, "the alien's removal or return shall be directed by the Attorney General[.]"  8 U.S.C § 1158(c)(3)

In removal proceedings, an alien may reapply for asylum under 8 U.S.C. § 1158(a)(1).  *See Silwany-Rodriguez v. I.N.S.*, 975 F.2d 1157, 1161 (5th Cir. 1992) (citing *Matter of B-*, 20 I. & N. Dec. 427 (BIA 1991) (asylum application in removal proceeding is considered a new application).  An alien in removal proceedings is entitled to a full evidentiary hearing, including "a reasonable opportunity to examine the evidence against the alien, to present evidence on the alien's own behalf, and to cross-examine witnesses presented by the Government[.]"  8 U.S.C.

§ 1229a(b)(4).   The alien may appeal an adverse decision to the
Board of Immigration Appeals.   8 C.F.R. § 1003.   If the BIA rules
against the alien, he or she may file a petition for review of a
final order of removal with the appropriate United States Court
of Appeals.   8 U.S.C. § 1252(a)(5) and (b)(9).

**II.   Standard**

Defendants assert that this case must be dismissed under
Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil
Procedure, but the Court only reaches Rule 12(b)(1).   Rule
12(b)(1) requires dismissal of an action if the court lacks
jurisdiction over the subject matter of the plaintiff's claim.
Motions submitted under that rule allow a party to challenge the
court's subject-matter jurisdiction based upon the allegations on
the face of the complaint.   *Barrera-Montenegro v. United States*,
74 F.3d 657, 659 (5th Cir. 1996); *see also Lopez v. City of
Dallas, Tex.*, No. 03-2223, 2006 WL 1450420, at *2 (N.D. Tex. May
24, 2006).   The plaintiff bears the burden of demonstrating that
subject-matter jurisdiction exists.   *See Paterson v. Weinberger*,
644 F.2d 521, 523 (5th Cir. 1981).

In ruling on a Rule 12(b)(1) motion to dismiss, the court
may rely on (1) the complaint alone, presuming the allegations to
be true, (2) the complaint supplemented by undisputed facts, or

6

(3) the complaint supplemented by undisputed facts and by the court's resolution of disputed facts. *Den Norske Stats Oljeselskap As v. HeereMac Vof*, 241 F.3d 420, 424 (5th Cir. 2001); *see also Barrera-Montenegro,* 74 F.3d at 659.  When examining a factual challenge to subject-matter jurisdiction that does not implicate the merits of plaintiff's cause of action, the district court has substantial authority "to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Garcia v. Copenhaver*, *Bell & Assocs.*, 104 F.3d 1256, 1261 (11th Cir. 1997); *see also Clark v. Tarrant County*, 798 F.2d 736, 741 (5th Cir. 1986).  Accordingly, the Court may consider matters outside the pleadings, such as testimony and affidavits.  *See Garcia*, 104 F.3d at 1261.  A court's dismissal of a case for lack of subject-matter jurisdiction is not a decision on the merits, and the dismissal does not necessarily prevent the plaintiff from pursuing the claim in another forum.  *See Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977).

## III. Analysis

In their complaint, plaintiffs assert that the Court has jurisdiction under the Administrative Procedures Act (5 U.S.C. § 701, *et. seq.*), as well as the federal question (28 U.S.C. § 1331), mandamus (28 U.S.C. § 1361), and declaratory judgment (28

7

U.S.C. § 2201, *et. seq.*) provisions.  Plaintiffs are suing United
States officials in their official capacities, and of the
provisions listed above, only the APA contains a waiver of
sovereign immunity.  *See Taylor-Callahan-Coleman Counties Dist.
Adult Probation Dept. v. Dole*, 948 F.2d 953, 956 (5th Cir. 1991)
(due to sovereign immunity, plaintiff could bring due process
claim only if permitted by the APA).  Thus, plaintiffs must
demonstrate that the Court has subject matter jurisdiction under
the APA in order to maintain this action.

Defendants argue that the Court lacks jurisdiction over
plaintiffs' claims because plaintiffs have failed to exhaust
their administrative remedies, but that is an imprecise way to
frame the issue.  In *Darby v. Cisneros*, 509 U.S. 137 (1993), the
Supreme Court held that federal courts have no authority to
require plaintiffs to exhaust administrative remedies before
seeking judicial review of a final agency action under the APA
unless a statute or agency regulation specifically mandates
exhaustion as a prerequisite to judicial review.  *Id.* at 154; *see
also United States v. Menendez*, 48 F.3d 1401, 1411 (5th Cir.
1995) (applying *Darby* and not requiring exhaustion when agency
review was wholly discretionary).  No statute or regulation
mandates exhaustion of any particular administrative remedy in
this case.  Defendants point to 8 U.S.C. § 1252(d), but that

provision states only that an alien must exhaust all administrative remedies available as of right before a court may review a final order of removal.  Plaintiffs do not ask the court to review any final orders of removal, which have not even been issued in this case.  Rather, plaintiffs ask the court to review the termination of their asylum status.  Thus, the exhaustion requirement of section 1252(d) does not bar plaintiffs' suit.

Defendants also argue that 8 U.S.C. § 1252(g) bars the Court from considering the initiation of removal proceedings against plaintiffs.  Under that provision, "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter."  Section 1252(g) limits judicial review only of the three discrete actions that it lists.  *Reno v. Am.-Arab Anti-Discrim. Comm.*, 525 U.S. 471, 482-83 (1999).  Here, plaintiffs do not challenge the initiation of removal proceedings against them, but challenge only the termination of their asylum status.  Thus, section 1252(g) is inapplicable.

The real question is whether the termination of plaintiffs' asylum status is a "final agency action" subject to judicial review under the APA.  Under 5 U.S.C. § 704, "[a]gency action

made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." As a general matter, two conditions must be met for an agency action to be considered final. First, "the action must mark the consummation of the agency's decision-making process." *Peoples Nat. Bank v. Office of Comptroller of Currency of the United States*, 362 F.3d 333, 377 (5th Cir. 2004). This means that the action "must not be of a merely tentative or interlocutory nature." *American Airlines, Inc. v. Herman*, 176 F.3d 283, 287 (5th Cir. 1999) (quoting *Bennett v. Spear*, 520 U.S. 154, 178 (1997)). Second, "the action must be one by which rights or obligations have been determined or from which legal consequences will flow." *Peoples Nat. Bank,* 362 F.3d at 377.

The finality of an agency's action must be gauged pragmatically. *Taylor-Callahan-Coleman Counties Dist. Adult Probation Dept. v. Dole*, 948 F.2d 953, 957 (5th Cir. 1991). Relevant pragmatic factors include "(1) the legal and practical effect of the agency action; (2) the definitiveness of the ruling; (3) the availability of an administrative solution; (4) the likelihood of unnecessary review; and (5) the need for effective enforcement of the [Immigration and Nationality] Act." *American Airlines*, 176 F.3d at 291 (citing *F.T.C. v. Standard Oil Co. of California*, 449 U.S. 232, 242-43 (1980)).

10

The termination of plaintiffs' asylum status is not a final agency action because it is not the consummation of the agency's decisionmaking process.  Rather, that termination is an intermediate step in a multi-stage administrative process.  When an alien's asylum status is terminated, "the alien's removal or return *shall* be directed by the Attorney General[.]"  8 U.S.C §1158(c)(3) (emphasis added).  Accordingly, when the USCIS terminated plaintiffs' asylum status, it simultaneously placed them in removal proceedings and issued a Notice to Appear.[6]

In the pending removal proceedings, plaintiffs may reapply for asylum.  *See* 8 U.S.C. § 1158(a)(1) ("Any alien who is physically present in the United States . . . irrespective of such alien's status, may apply for asylum in accordance with this section"); *see also Silwany-Rodriguez v. I.N.S.*, 975 F.2d 1157, 1161 (5th Cir. 1992) (citing *Matter of B-*, 20 I. & N. Dec. 427 (BIA 1991) (asylum application in removal proceeding is considered a new application); *Singh v. Chertoff*, No. C05-1454 MHP, 2005 WL 2043044, at *6 (N.D.Cal. Aug. 24, 2005) ("any alien whose asylum status is terminated has the opportunity to reapply for asylum").  Such an asylum application falls within the exclusive jurisdiction of the immigration judge who will

---

[6]    R. Doc. 1, Ex. 6.

administer the removal proceedings.  8 C.F.R. § 208.2(b).  The
alien may appeal an adverse decision to the Board of Immigration
Appeals.  8 C.F.R. § 1003.  If the BIA rules against the alien,
he or she may file a petition for review of a final order of
removal with the appropriate United States Court of Appeals.  8
U.S.C. § 1252(a)(5); *id.* § 1252(b)(9).

Multiple courts have ruled that they lack jurisdiction to
hear challenges to the termination of an alien's asylum status
because that termination is only an intermediate stage in the
administrative process.  In *Tagoe v. Ashcroft*, 108 Fed.Appx. 597,
599 n.4 (10th Cir. 2004), an unpublished decision, the Tenth
Circuit ruled that the revocation of the plaintiff's asylum
status was not a final agency action since the plaintiff could
reassert his asylum application in the removal proceeding.
Likewise, in *Gill v. Bardini*, No. C-08-05190 RMW, 2010 WL 761307,
at *5 (N.D.Cal. Mar. 3, 2010) and *Singh v. U.S. Citizenship &*
*Immigration*, No. 06-7189, slip op. at 10 (N.D.Cal. May 28, 2009),
courts ruled that they lacked jurisdiction to hear challenges to
the termination of plaintiffs' asylum status because the
plaintiffs could reassert their asylum applications in further
administrative proceedings.

Plaintiffs argue that the termination of their asylum status
and the pending removal proceedings are entirely separate and

independent proceedings.  Plaintiffs note that the USCIS
terminated their asylum, while the removal proceedings will be
administered by an immigration judge who is not within the USCIS.
Plaintiffs also argue that they now have the burden of proving
that they should be granted asylum, while before termination the
presumption was that plaintiffs were entitled to asylum status.
Moreover, plaintiffs argue that they have suffered legal
consequences from the termination of asylum, including the loss
of employment authorization and the right to travel in and out of
the United States.  Some courts have followed plaintiffs'
reasoning and held that a district court has jurisdiction to hear
a challenge to the termination of an alien's asylum status.  *See*
*Singh v. Bardini*, No. C-09-3382 EMC, 2010 WL 308807, at *5
(N.D.Cal. Jan. 19, 2010); *Singh v. Chertoff*, No. C05-1454 MHP,
2005 WL 2043044, at *3 (N.D.Cal. Aug. 24, 2005); *Sidhu v.*
*Bardini*, No. C 08-05350 CW, 2009 WL 1626381, at *4-5 (N.D.Cal.
June 10, 2009).

But under the practical approach that must guide the Court
in making a finality determination, the termination of
plaintiffs' asylum status cannot be considered a final agency
action.  That termination is not the consummation of the agency's
decision-making process.  Plaintiffs have cited no convincing
authority that the immigration judge administering the removal

13

proceedings cannot decide that the termination of asylum was improper. To the contrary, the immigration judge must determine "whether an alien is removable from the United States," 8 U.S.C.A. § 1229a(c)(1)(A), and an alien granted asylum shall not be removed. 8 U.S.C. § 1158(c)(1)(A). If the termination of asylum was invalid, then the immigration judge has no grounds to order that the alien be removed unless the judge terminates the alien's asylum status on his or her own authority. *See* 8 C.F.R. § 208.24(f) (immigration judge may terminate asylum).

Further, plaintiffs may appeal an adverse decision by the immigration judge to the Board of Immigration Appeals. 8 C.F.R. § 1003. The BIA may overturn an order of removal on the grounds that the termination of asylum was improper. In *Matter of Garcia-Alzugaray*, 19 I. & N. Dec. 407 (BIA 1986), for example, the Board ruled that the alien's refugee status had not been terminated in accordance with the Immigration and Nationality Act when the written notice of termination was "factually inaccurate and legally deficient." *Id.* at 409. Therefore, the Board ruled, the applicant's refugee status had not actually been terminated, and the exclusion proceedings brought against the alien were improper. *Id.* at 410-11. Similarly, in this case, the Board may agree with plaintiffs that the notice of termination of asylum status was inadequate and that plaintiffs are not removable.

14

With the removal proceedings pending and an appeal to the BIA still possible, the decision to terminate plaintiffs' asylum status cannot be considered the agency's "last word" on the matter.  *See Whitman v. American Trucking Associations*, 531 U.S. 457 (2001) (quoting *Harrison v. PPG Industries, Inc.*, 446 U.S. 578, 586 (1980)) (only when the agency "has rendered its last word on the matter" is the action considered final).  Plaintiffs must "pursue administrative adjudication, not shortcut it." *American Airlines, Inc. v. Herman*, 176 F.3d 283, 292 (5th Cir. 1999).

If the BIA rules against plaintiffs, they may seek review of that decision in the Court of Appeals.  Under 8 U.S.C. § 1252(a)(5) and (b)(9), a petition for review to the appropriate court of appeals is the exclusive means to seek judicial review of a final order of removal.  The Supreme Court has noted that § 1252(b)(9) is an "unmistakable 'zipper' clause" that channels review of all final orders of removal to the courts of appeal. *Reno v. Am.-Arab Anti-Discrim. Comm.*, 525 U.S. 471, 483 (1999); *see also Aguilar v. U.S. Immigration and Customs Enforcement Div. of Dept. of Homeland Sec.*, 510 F.3d 1, 9 (1st Cir. 2007) (describing the "expanse" of § 1259(b)(9) as "breathtaking"). That provision does not directly bar this Court from reviewing plaintiffs' complaint, as they seek review of the termination of

their asylum status, not of a final order of removal. Nonetheless, § 1252(b)(9) demonstrates that Congress' intent was for courts of appeal to review final orders of removal at the conclusion of the administrative proceedings, not for district courts to insert themselves in the middle of the process.[7]  In *Aguilar*, the First Circuit noted that the purpose of § 1252(b)(9) is "to put an end to the scattershot and piecemeal nature of the review process that previously had held sway in regard to removal proceedings." 510 F.3d at 9.  Likewise, the APA's finality rule is intended to avoid "piecemeal review which at the least is inefficient and upon completion [of the agency action] might prove to have been unnecessary." *American Airlines, Inc. v. Herman*, 176 F.3d 283, 292 (5th Cir. 1999) (quoting *F.T.C. v. Standard Oil Co. of California*, 449 U.S. 232, 242 (1980)).

Rather than engaging in such "claim-splitting," *Aguilar*, 510 F.3d at 10, plaintiffs should await the completion of the administrative process, after which they may file a petition for review in the Court of Appeals.  Under § 1252(a)(2)(D), plaintiffs may bring constitutional claims, such as their due

---

[7]    *Cf. I.N.S. v. St. Cyr*, 533 U.S. 289 (2001) (district court may hear an alien's *habeas* petition).  In *St. Cyr*, the Court reasoned that § 1252(b)(9) does not clearly and unambiguously bar district courts' jurisdiction under the general *habeas* statute.  *Id.* at 313-14.  That reasoning is inapplicable in the non-*habeas* context.

process claim, in a petition for review.  Such a petition is the proper means for plaintiffs to obtain judicial review of their claims.

Plaintiffs also argue that they have lost their employment authorization due to the termination of their asylum status.  But plaintiffs may reapply for employment authorization while their new asylum applications are pending.  8 U.S.C. 1158(d)(2); 8 C.F.R. § 208.7.  Furthermore, plaintiffs' employment authorization may be reinstated if the immigration judge or the BIA determines that the termination of plaintiffs' asylum status was improper.  Thus, that termination may not have a "substantial effect *which cannot be altered by subsequent administrative action.*"  *American Airlines, Inc. v. Herman*, 176 F.3d 283, 287 (5th Cir. 1999) (quoting *Atlanta Gas Light Co. v. Federal Power Comm'n*, 476 F.2d 142, 147 (5th Cir. 1973) (emphasis in *American Airlines*)).  Plaintiffs also argue that they have lost the right to leave and return to the United States, but an asylee's ability to travel internationally is at the discretion of the Attorney General even if his or her asylum status is not terminated.  8 U.S.C. § 1158(c)(1)(C).  In any event, the termination of plaintiffs' asylum status will not result in their expulsion before the removal proceedings are completed.

17

Notwithstanding the interim legal consequences, the termination of plaintiffs' asylum status is not the consummation of the administrative process.  The Fifth Circuit has made clear that an agency action is reviewable under the APA only if it has legal consequences *and* marks the consummation of the agency's decision-making process.  *Peoples Nat. Bank v. Office of Comptroller of Currency of the United States*, 362 F.3d 333, 377 (5th Cir. 2004).  Plaintiffs will have multiple opportunities to present their claims in the administrative proceedings and before the Court of Appeals.  Therefore, the termination of plaintiffs' asylum status is not a "final agency action" under the APA, and the Court lacks subject matter jurisdiction over plaintiff's complaint.

## IV.  Conclusion

For the foregoing reasons, defendants' motion is GRANTED, and plaintiffs' complaint is DISMISSED.


New Orleans, Louisiana, this 10th day of December, 2010.


SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

18